# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Velez*, 2012 IL App (1st) 101325

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SAMUEL VELEZ, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-10-1325 |
| Filed | March 22, 2012 |
| Rehearing denied | April 16, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's conviction for child abduction, the appellate court rejected defendant's contentions that he was denied due process when the trial court gave the pattern instruction on the permissive presumption that defendant acted with an unlawful purpose when he attempted to lure the victim into his van, that the "luring" section of the child abduction statute was unconstitutionally vague as applied to him, and that the trial court erred in denying defendant a bill of particulars, in refusing to allow the cross-examination of an officer about the search of defendant's van, in finding defendant's offense was sexually motivated for purposes of sentencing, and in requiring defendant to register as a sex offender. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CR-5043; the Hon. Colleen McSweeney-Moore, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Sarah Curry, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary L. Boland, and Tasha-Marie Kelly, Assistant State's Attorneys, of counsel), for the People. |

| Panel | JUSTICE FITZGERALD SMITH delivered the judgment of the court, with opinion. |
| | Presiding Justice Lavin and Justice Sterba concurred in the judgment and opinion. |

## OPINION

¶ 1    After a jury trial, defendant Samuel Velez was convicted of child abduction and sentenced to two years' incarceration. On appeal, defendant contends: (1) he was denied his due process rights due to a permissive presumption contained in a jury instruction given to the jury; (2) the child abduction statute under which defendant was convicted is unconstitutionally vague as applied to defendant; (3) the trial court erred in denying his motion for a bill of particulars; (4) the trial court erred in precluding defense counsel from cross-examining a police officer regarding what he found when searching defendant's van; (5) the trial court erred in finding that defendant's offense of child abduction was sexually motivated where that inference was not supported by the underlying facts of the offense; and (6) he was denied his due process rights where, because there were inadequate procedural safeguards during his hearing on sexual motivation, the trial court arbitrarily found the offense to be sexually motivated. For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3    Defendant was charged via indictment with one count of child abduction. Prior to trial, defendant filed a motion for a bill of particulars, requesting that the State define the "exact statement(s) or action(s)" which form the "other than a lawful purpose." The State filed a response in which it stated that it would "rely on the statements and actions of the defendant when he confronted [J.H.] on February 20, 2008 at approximately 3:15 P.M. in the area of 9500 S. Oak Park Avenue, Oak Lawn, Illinois as summarized in the Oak Lawn Police Department reports that were previously tendered to defense counsel." The court denied the motion.

¶ 4    The following evidence was adduced at trial. On February 20, 2008, 14-year-old J.H. was

an eighth-grade student at Simmons Middle School located on 95th Street in Oak Lawn, Illinois. When school ended that day at 3 p.m., J.H. walked down 95th Street to meet her mother. J.H. was wearing a hooded winter coat and had a school bag on her shoulder.

¶ 5    J.H. normally met her mother near the Car Max on 95th Street after school. That day, however, J.H. arrived at Car Max and saw that her mother was not there. As was prearranged for occasions when her mother could not get to their meeting place on time, J.H. began walking down 95th Street, westbound to Oak Park Avenue. Per the plan, she would continue heading westward until she would meet up with her mother.

¶ 6    As J.H. walked down 95th Street, a man in a white van slowed down, looked at her, smiled, and beeped his horn. J.H. testified at trial that the man did a "double take." J.H. tried to ignore him, put her head down and kept walking. J.H. identified defendant as this man in court.

¶ 7    J.H. continued walking, and eventually turned right onto Oak Park Avenue. When she turned, she noticed the same white van parked on Oak Park Avenue with the passenger side window rolled down and the engine still running. J.H. put the hood on her coat up and kept walking, trying to ignore the man even though her path took her right by the passenger window. As she walked past the van, the man said, "Hey baby girl, how you doing?" The man was sitting in the driver's seat, leaning toward the open window, and motioning for her to approach the van.

¶ 8    J.H. felt scared and began walking faster in an attempt to get away from defendant. Defendant asked her if she needed a ride home. J.H. continued walking quickly. Defendant began driving slowly alongside J.H. and asked her if she had just gotten out of school. J.H. did not respond. Defendant continued driving alongside J.H. and again asked her if she needed a ride home. At that point, J.H. saw her mother down the street and told defendant, "No, my mom's right there." J.H. ran to her mother's car and defendant drove away.

¶ 9    Meanwhile, Kathleen H., J.H.'s mother, had driven to Oak Park Avenue to look for J.H. As she sat in her car, she saw J.H. walking toward her. As Kathleen H. waited, she saw a white van pull around the corner, park on the side of the road, and roll down the passenger side window. Kathleen H. then saw J.H. turn the corner and pull her hood up. She thought something did not feel right because she could see J.H. "tensing up" near the van. As she watched, she saw defendant lean over and talk to J.H., and saw J.H. walk faster in her attempt to escape defendant. Defendant kept pace with J.H. in his van.

¶ 10    J.H. reached Kathleen's car and told her mother what had happened. Kathleen called the police and began following defendant's van. She provided the police with a description of the van and the license plate number. The police instructed her to stop following the van and to meet them in a nearby parking lot. At the parking lot, Kathleen and J.H. spoke with various officers, including Chicago police officer Brian Williams. J.H. told Officer Williams that the man who had been following her had a goatee.

¶ 11    After speaking with Kathleen and J.H., Officer Williams and his field training officer Thomas Culhane returned to the Oak Lawn police station to continue their investigation. They had the license plate number as well as information that the van had the word "Integra" written on the side. They contacted Integra Healthcare Systems, a medical equipment

delivery service. Officer Williams spoke with Barbara Anderson, the director of operations, and informed her of the situation.

¶ 12    Anderson contacted her driver supervisor, Michael Volarevic, and asked him to look up the vehicle plate number to see which driver was assigned to that van. Volarevic did so and saw that it was assigned to defendant. He then called defendant on his cell phone and was unable to reach him. About 20 minutes later, defendant called Volarevic. Defendant was scheduled to be at 119th Street and Halsted, but he informed Volarevic that he was in Oak Lawn having lunch. Volarevic instructed defendant to go to the Oak Lawn police station, explaining that the police had gotten a complaint. He asked defendant what had happened. Volarevic testified that defendant then told him he did not know what he was talking about. He explained he had just eaten lunch, jumped in his van, and "saw just a good-looking girl on the street, and just whistled at her. I didn't get out of my car or anything." Volarevic also noted that, when he saw defendant the morning of February 20, 2008, defendant had a "very short clean-cut goatee."

¶ 13    On cross-examination, Volarevic denied having spoken to police in February 2008. He testified that he first talked with the police a year and a half after the incident.

¶ 14    Anderson informed the police that defendant was the driver of the van in question. Around 6 p.m., defendant arrived at the police station, and Officer Williams noticed that he looked as though he had recently shaved with a dry razor. He did not have a goatee. After being informed of his *Miranda* rights, defendant agreed to talk with the police.

¶ 15    Defendant told the officers that he had been in the area of 95th and Natoma at 3 p.m. that day placing a to-go order at the Lucky Burrito restaurant. Defendant said he then proceeded to the 9400 block of Oak Park Avenue, parked his van, and ate his burrito. Defendant said he was parked there for about 10 minutes and, during that time, he did not speak to anybody or see anybody.

¶ 16    Officer Williams testified that he then went to the Lucky Burrito and verified that defendant had placed a to-go order that afternoon. The restaurant's video surveillance recording showed defendant entering the restaurant and placing his order, and also showed the van with "Integra" written on it parked outside.

¶ 17    Later that evening, J.H. and Kathleen identified defendant in a photo array at the police station. They also identified defendant's van in the parking lot as the one they saw earlier.

¶ 18    On February 21, J.H. and her parents returned to the police station to speak with Cook County Assistant State's Attorney (ASA) Nicholle Hempel. ASA Hempel testified at trial that J.H. seemed to be a "typical grammar age school student" who "looked young." J.H. and Kathleen identified defendant in a lineup.

¶ 19    ASA Hempel then spoke with defendant, who again waived his *Miranda* rights. ASA Hempel testified that defendant gave her an account of the day similar to that he had previously given Officer Williams. Specifically, defendant said he was working on February 20, and that, around 3:00 p.m., he purchased a burrito at the Lucky Burrito and parked at 95th Street and Oak Park to eat in his van. Defendant claimed that he remained in his van and did not talk to or see anybody else. Defendant told ASA Hempel that he had worn a goatee in the past, but that he shaved it off two or three days prior.

¶ 20 The jury found defendant guilty of child abduction. Defendant filed a motion for a new trial, which was denied. The court sentenced defendant to two years' incarceration. It also found that the offense in this case was sexually motivated, explaining that it could think of situations where an individual attempts to lure a child into a vehicle where it might not be sexually motivated, such as where the individual holds the child for ransom. However, in this case, it believed the crime was sexually motivated.

¶ 21 Defendant appeals.

¶ 22                                              ANALYSIS
¶ 23                                    I. Jury Instruction Issue

¶ 24 Defendant first contends that the trial court improperly instructed the jury. Specifically, defendant argues that a jury instruction given, Illinois Pattern Jury Instructions, Criminal, No. 8.11A (4th ed. 2000) (hereinafter IPI Criminal 4th No. 8.11A), was improper as a matter of law because the permissive presumption within deprived defendant of due process where (1) there is no rational connection between the fact that defendant attempted to lure a child into his van and the resulting presumption that he did so with an unlawful purpose; and (2) the State failed to introduce corroborating evidence of defendant's guilt, and the presumed fact that defendant acted with an unlawful purpose "does not flow beyond a reasonable doubt from the proven facts." We disagree.

¶ 25 First, the State urges this court to review this issue for plain error, arguing that defendant forfeited this issue on appeal by failing to properly preserve it. See *People v. Chapman*, 194 Ill. 2d 186, 225 (2000) (failure to properly preserve an alleged error by both an objection at trial and a written posttrial motion constitutes a procedural default of that error on review). Specifically, the State argues that, while defendant argued to the trial court that the jury instruction was impermissible because it "essentially shifted the burden to him and indicated to the jury that he needed to present some evidence in order to rebut the inference" and included the same issue in his posttrial motion, that issue differs from the issue before us on appeal. Defendant responds that he did, in fact, properly preserve this issue for appeal because his argument on appeal, that the instruction created an unlawful permissive presumption, is the same as that made below, that is, that the instruction impermissibly shifted the burden of proof to defendant. We disagree with the State that the argument on appeal presents a "wholly different issue" than that presented below and find that defendant properly preserved this issue for appeal.

¶ 26 The purpose of jury instructions is to convey to the jury the correct principles of law applicable to the evidence submitted to it so that the jury may reach a correct conclusion according to the law and the evidence. *People v. Hopp*, 209 Ill. 2d 1, 8 (2004). While the giving of jury instructions is generally within the discretion of the trial court, we review *de novo* the question of whether the jury instructions accurately conveyed the applicable law to the jury. *People v. Parker*, 223 Ill. 2d 494, 501 (2006). Rather than considering a jury instruction in isolation, we review whether the instructions given the jury " 'considered as a whole, fully and fairly announce the law applicable to the respective theories of the People and the defense.' " *People v. Terry*, 99 Ill. 2d 508, 516 (1984) (quoting *People v. Kolep*, 29

Ill. 2d 116, 125 (1963)).

¶ 27    The jury instruction in question reads:

"If you find that the defendant lured, or attempted to lure a child under 16 years of age into a motor vehicle, and that he did so without the consent of a parent or lawful custodian of the child, you may infer it was for other than a lawful purpose.

You are never required to make this inference. It is for the jury to determine whether the inference should be made. You should consider all of the evidence in determining whether to make this inference." Illinois Pattern Jury Instructions, Criminal, No. 8.11A (4th ed. 2000) (hereinafter IPI Criminal 4th No. 8.11A).

¶ 28    A person accused of a crime may only be convicted of a criminal offense upon proof that establishes guilt beyond a reasonable doubt. *People v. Hester*, 131 Ill. 2d 91, 98 (1989). Nonetheless, the State may be entitled to rely upon presumptions or inferences in order to establish a defendant's guilt. *Hester*, 131 Ill. 2d at 98. "A presumption is a legal device that either permits or requires the trier of fact to assume the existence of an ultimate fact, after establishing certain predicate facts." *People v. Woodrum*, 223 Ill. 2d 286, 308 (2006) (citing *People v. Pomykala*, 203 Ill. 2d 198, 203 (2003), citing *People v. Watts*, 181 Ill. 2d 133, 141 (1998)). "An inference is a factual conclusion that can rationally be drawn by considering other facts. Thus, an inference is merely a deduction that the fact finder may draw in its discretion, but is not required to draw as a matter of law." *People v. Funches*, 212 Ill. 2d 334, 340 (2004) (citing Michael H. Graham, Cleary & Graham's Handbook of Illinois Evidence § 302.2, at 81 (8th ed. 2004), and 1 Clifford S. Fishman, Jones on Evidence § 4:1, at 299-300 (7th ed. 1992)); *Woodrum*, 223 Ill. 2d at 308 ("The fact finder is free to accept or reject a permissive presumption.").

¶ 29    Here, the instruction at issue contains an inference. An inference may also be referred to as a permissive presumption. *People v. Frazier*, 123 Ill. App. 3d 563, 572 (1984) ("An inference, occasionally referred to as a 'permissive presumption,' permits but does not require a jury to find that one fact is proved by the existence of another fact."). An inference does not violate due process where: (1) there is a rational connection between the basic fact and the presumed fact; (2) the presumed fact must be more likely than not to flow from the basic fact; and (3) the inference is supported by corroborating evidence of guilt. *People v. Housby*, 84 Ill. 2d 415, 424 (1981). "If there is no corroborating evidence, the leap from the basic fact to the presumed element must still be proved beyond a reasonable doubt." *Funches*, 212 Ill. 2d at 343 (citing *Hester*, 131 Ill. 2d at 100; *Housby*, 84 Ill. 2d at 421 (citing *County Court v. Allen*, 442 U.S. 140, 165-67 (1979)).

¶ 30    A person commits child abduction by, in relevant part, intentionally luring or attempting to lure a child under 16 years of age into a motor vehicle without the consent of a parent or lawful custodian for other than a lawful purpose. 720 ILCS 5/10-5(b)(10) (West 2008). The phrase "other than a lawful purpose" in the child abduction statute implies actions which violate the Criminal Code of 1961 (720 ILCS 5/1-1 *et seq.* (West 2008)). *People v. Williams*, 133 Ill. 2d 449, 453-54 (1990). "The required showing *** [of] 'other than a lawful purpose' is essentially a statement of the criminal intent, or *mens rea*. Criminal intent is a state of mind that is usually inferred from the surrounding circumstances." *Woodrum*, 223 Ill. 2d at

-6-

316 (citing *People v. Maggette*, 195 Ill. 2d 336, 354 (2001)).

¶ 31    The State presented sufficient evidence to satisfy the three elements set forth in *Housby* as to whether the act proved, *i.e.*, that defendant attempted to lure J.H. into his vehicle, was committed for "other than a lawful purpose." See 720 ILCS 5/10-5(b)(10) (West 2008). The evidence adduced at trial showed that J.H. was a 14-year-old girl who was walking along a sidewalk after school, carrying a bookbag. Defendant, a 41-year-old man whom J.H. did not know, saw her. He smiled at her, honked his horn, and slowed his van in order to talk to her. J.H. tried to ignore him, put her head down, and walked faster. J.H. turned a corner and saw defendant parked in his van up the street. When she neared the van, defendant asked J.H. if she wanted a ride home. J.H. continued to ignore him. She put up her hood and walked faster. Despite all of this, defendant continued to pursue J.H. He paced her with his van, driving alongside her as she continued walking down the sidewalk. He called her "baby girl" and again asked her of she wanted a ride home. He leaned from the driver's seat to the passenger seat, motioning through the window for her to approach the van. Defendant only left J.H. alone when J.H. told him she saw her mother and began to run toward her mother's car.

¶ 32    We find a rational connection between the fact proved, *i.e.*, that defendant attempted to lure a child under 16 into his vehicle, and the fact presumed, *i.e.*, that defendant did so with other than a lawful purpose. The jury accepted J.H.'s testimony that defendant used words and gestures designed to direct her to enter his car. She felt fearful, tried to ignore him, and then increased her pace in order to escape from defendant. Defendant called her "baby girl" and drove alongside her, beckoning her toward his vehicle. When viewed in connection with all of the other evidence adduced at trial, including defendant leaving the scene when J.H. told him she saw her mother, his attempt to change his appearance that day, and his denial to police that he had even seen J.H., the rational inference to be drawn is that defendant had an unlawful intent when he attempted to lure J.H. into his van.

¶ 33    We are not persuaded by defendant's argument that, because he did not touch, harm, or threaten J.H., there is no rational connection between the fact proved and the fact presumed. Specifically, defendant argues:

        "There is no substantial assurance that just because [defendant] honked at J.H., asked her how she was doing, and offered her a ride home without her parent's consent, that he more likely than not did so for an unlawful purpose. *** [Defendant] spoke to a young girl in the middle of the afternoon on a busy street from his work van. [Defendant] did not touch or harm J.H. He did not threaten her. He did not get out of his van. As soon as J.H. said she did not need a ride, [defendant] drove away. The fact that [defendant] offered J.H. a ride home without the consent of her parents does not rationally support the presumption that he did so without a lawful purpose."

¶ 34    In *People v. Patten*, 230 Ill. App. 3d 922 (1992), this court addressed the fact that the child abduction statute treats an attempted abduction and a completed abduction as the same crime:

        "Defendant next asserts that punishing unsuccessful abductions as severely as successful abductions is an unreasonable method of accomplishing the objective of

protecting children; therefore, it is in violation of due process. More or different people are not affected, he argues; only the punishment is increased for attempt, which is inconsistent with the idea of punishing attempt acts less seriously than completed acts. Ill. Rev. Stat. 1989, ch. 38, par. 8-4(c).

The legislative history of section 10-5(b)(10) reveals the concern that attempted luring of a child is as serious a threat to the safety of a child as a successful abduction. (See *People v. Williams* [,133 Ill. 2d 449, 457 (1990)].) In *Williams*, the supreme court observed that '[o]nce a child is taken into a vehicle and whisked away by a person harboring a criminal motive, it becomes exceedingly difficult, if not impossible, for law enforcement personnel to intervene for the protection of the child.' (133 Ill. 2d at 457.) Here, the increased penalty may have a deterrent effect on would-be violators by declaring that an attempt will be treated as harshly as a crime accomplished.

Accordingly, we find that section 10-5(b)(10) is not in violation of the proportionate penalties or due process clauses." *Patten*, 230 Ill. App. 3d at 931.

The child abduction statute criminalizes the act of luring a child, whether or not the act is successful, in order to protect children from further acts of violence. Under the statute, there is no requirement that a defendant must actually touch or harm the child in order to be guilty of the crime of child abduction. Therefore, defendant's argument that, because he did not actually physically harm J.H., his attempted luring of J.H. into his vehicle does not rationally support the presumption that he did so with other than a lawful purpose is unpersuasive.

¶ 35    Nor do we find support for defendant's argument that he was denied due process under *Housby* because the State failed to introduce corroborating evidence of defendant's guilt in order to allow the jury to make the inference in IPI Criminal 4th No. 8.11A. Rather, the State introduced evidence at trial that, after defendant attempted to lure J.H. into his van and before he went to the police station later that same day, he changed his appearance by shaving off the goatee he had worn for at least six months prior. Had defendant been innocently offering J.H. a ride home, as he argues, there would be no reason for him to alter his appearance in an apparent attempt not to be identified by J.H.

¶ 36    Moreover, the fact that defendant fled when he saw J.H.'s mother nearby shows a consciousness of guilt which raises a rational inference of unlawful intent. See *People v. McDonald*, 168 Ill. 2d 420, 448 (1995) ("While evidence of flight by itself is not sufficient to establish guilt, it is a circumstance from which a trier of fact may infer consciousness of guilt. (See *People v. Harris* (1972), 52 Ill. 2d 558, 561.) Consequently, a trier of fact may consider a defendant's flight with other factors tending to establish guilt. ([*People v.*] *Campbell*, 146 Ill. 2d [363,] 388 [(1992)]; *People v. Brown* (1963), 27 Ill. 2d 23, 26.)").

¶ 37    Finally, defendant's statement at the police station to police officers and to ASA Hempel also supports the inference that he acted for other than a lawful purpose. When defendant spoke with both the police and the ASA, he denied talking to or even seeing J.H. in the area of 95th and Oak Park. If he had an innocent intent in talking with J.H. to merely offer J.H. a ride home, as he posits on appeal, then he likely would have said as much to the authorities. Instead, defendant tried to conceal his interaction with J.H., which could be considered evidence of his guilt, corroborating the testimony of J.H. and her mother.

¶ 38    Defendant was not deprived of his due process rights by the presumption contained in IPI Criminal 4th No. 8.11A where the evidence at trial clearly showed a rational connection between the inferred fact and the proved fact, *i.e.*, between the fact that defendant attempted to lure J.H. into his van and the presumption that he did so for an unlawful purpose; the inferred fact was more likely than not to flow from the proved fact, *i.e.*, it was more likely than not that defendant lured J.H. for an unlawful purpose; and the inference was supported by corroborating evidence of guilt, *i.e.*, that defendant fled the scene, altered his appearance, and denied having any interaction with J.H.. See *Housby*, 84 Ill. 2d at 424. The jury was instructed that it could infer–but was not required to do so–that defendant's attempt to lure J.H. into his van was for other than a lawful purpose. This is precisely what the law requires. The jury inferred an unlawful purpose and found defendant guilty of child abduction.

¶ 39    In addition, along with the "you may infer" language, the jury was also instructed that defendant is presumed innocent at every stage, a presumption that is not overcome unless from all the evidence it is convinced beyond a reasonable doubt that defendant is guilty, and that the burden to prove defendant guilty beyond a reasonable doubt remains with the State throughout the case. "When examining instructions in a case, no single instruction is to be judged in artificial isolation. It must be viewed in the context of the entire charge." *Housby*, 84 Ill. 2d at 433-34. In the case at bar, each instruction given the jury was taken from the Illinois Pattern Jury Instructions, and each accurately stated the law. Accordingly, the instructions comported with Illinois Supreme Court Rule 451(a) (Ill. S. Ct. R. 451(a) (eff. July 1, 1997)), which requires that, where a court in a criminal case determines that the jury should be instructed on a subject, and the Illinois Pattern Jury Instructions contains an applicable instruction, then the IPI "shall be given unless the court determines it does not accurately state the law." (Internal quotation marks omitted.) *People v. Durr*, 215 Ill. 2d 283, 300-01 (2005). We find herein that defendant was not denied due process where the trial court instructed the jury with IPI Criminal 4th No. 8.11A. Accordingly, the trial court did not err in instructing the jury with IPI Criminal 4th No. 8.11A.


¶ 40                    II. As-Applied Challenge to Child Abduction Statute

¶ 41    Defendant next contends that the "luring" section of the child abduction statute (720 ILCS 5/10-5(b)(10) (West 2008)) is unconstitutionally vague as applied to him, as the statute did not provide him adequate notice of the conduct that would subject him to criminal penalties. Specifically, defendant argues that the failure "to define the unlawful act or purpose alleged" subjected him to the "arbitrary whims of the jury" as to whether the State proved this element of the offense and failed to give him "adequate notice as to what actions or conduct subjected [him] to criminal penalties." We disagree.

¶ 42    A statute is presumed to be constitutional and, thus, the party challenging it bears the burden of clearly demonstrating its invalidity. See *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 290 (2003); accord *People v. Bailey*, 167 Ill. 2d 210, 225 (1995); *People v. Zapata*, 347 Ill. App. 3d 956, 966 (2004). We are duty-bound to construe a statute in a manner that upholds its validity and constitutionality, if this can reasonably be done. See *Cryns*, 203 Ill. 2d at 290-91; accord *In re C.E.*, 161 Ill. 2d 200, 227 (1994); *People v. Cosby*, 305 Ill. App.

3d 211, 224 (1999) (we must affirm statute's constitutionality and validity whenever possible). In examining a statute's constitutionality, we employ a *de novo* standard of review. See *Zapata*, 347 Ill. App. 3d at 967.

¶ 43 For a statute to comply with due process, it must meet two requirements. First, it must give a person of ordinary intelligence a reasonable opportunity to know what conduct is lawful and what conduct is unlawful so that he may act accordingly. See *Bailey*, 167 Ill. 2d at 228. However, a statute need not define the proscribed conduct with "mathematical precision" or give letter-perfect notice of this conduct to avoid invalidation on vagueness grounds. See *People v. Holt*, 271 Ill. App. 3d 1016, 1026 (1995). Rather, as long as the statute clearly applies to the defendant's conduct in light of the facts of the case, a challenge to the statute's constitutionality based upon vagueness will not succeed. See *Cryns*, 203 Ill. 2d at 291-92; see *Holt*, 271 Ill. App. 3d at 1026 (where statute prohibits conduct knowingly done to accomplish that which is prohibited, accused cannot claim he suffered from lack of warning or knowledge that his conduct violated the law).

¶ 44 The second requirement of due process is that the statute must provide explicit standards to police officers, judges and juries who apply the statute in order to prevent its arbitrary and discriminatory enforcement. See *In re C.E.*, 161 Ill. 2d at 227. However, the statute will not be declared vague if a mere hypothetical situation involving disputed meanings of some of its terms is presented. See *People v. Greco*, 204 Ill. 2d 400, 416 (2003); see also *In re C.E.*, 161 Ill. 2d at 211 (" '[t]he fact that the [statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid' " (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987))); *Holt*, 271 Ill. App. 3d at 1027 ("statute is not unconstitutionally vague simply because it allows some room for judicial interpretation"). Rather, where judicial construction of the statute may be employed to render it sufficiently definite so as to preclude arbitrary or discriminatory application, a challenge to the statute's constitutionality based upon vagueness will not succeed. See *In re C.E.*, 161 Ill. 2d at 228. In sum, a statute violates due process on vagueness grounds " ' "only if its terms are so ill-defined that the ultimate decision as to its meaning rests on the opinions and whims of the trier of fact rather than any objective criteria or facts." ' " *Cryns*, 203 Ill. 2d at 291 (quoting *Stern v. Norwest Mortgage, Inc.*, 179 Ill. 2d 160, 168 (1997), quoting *People v. Burpo*, 164 Ill. 2d 261, 266 (1995)).

¶ 45 Applying the two-part due process analysis outlined earlier, it is clear that the child abduction statute is indeed constitutional, not void for vagueness, and should be affirmed. The statute both sets forth what conduct is unlawful and provides sufficiently definite standards to guide triers of fact so that its application does not depend merely on their private conceptions. There is no doubt that defendant's conduct in the instant case clearly falls within the statutory proscription. The relevant portion of the child abduction statute reads as follows:

> "(b) A person commits child abduction when he or she does any one of the following:
>
> * * *
>
> (10) Intentionally lures or attempts to lure a child under the age of 16 into a motor vehicle, building, housetrailer, or dwelling place without the consent of the parent or

lawful custodian of the child for other than a lawful purpose." 720 ILCS 5/10-5(b)(10) (West 2008).

It is evident from the plain language of the statute that the luring or attempted luring of a child into a vehicle or dwelling place without the consent of a parent or custodian is illegal when the individual committing the luring has any underlying criminal intent or *mens rea*. See *Woodrum*, 223 Ill. 2d at 316 ("The required showing *** [of] 'other than a lawful purpose' is essentially a statement of the criminal intent, or *mens rea*. Criminal intent is a state of mind that is usually inferred from the surrounding circumstances." (citing *Maggette*, 195 Ill. 2d at 354)). Therefore, defendant had sufficient notice regarding precisely when his actions became criminal. See *Bailey*, 167 Ill. 2d at 228 (to comport with due process requirements, a statute "must give a person of ordinary intelligence a reasonable opportunity to know what conduct is lawful and what conduct is unlawful so that he may act accordingly" (internal quotation marks omitted)).

¶ 46 We specifically disagree with defendant's assessment that, "[w]ithout further explanation, the statute as applied proscribed [defendant] from action; for 'other than a lawful purpose.' This broad term provided virtually no guidance as to the statute's reach as applied to [defendant]. Because this term was left undefined and unexplained, the statute did not provide adequate notice of what conduct was proscribed, and therefore the statute was unconstitutionally vague as applied." Rather, the statute clearly informed defendant that, if he attempted to lure J.H. in order to commit actions which would violate the Criminal Code, he would be guilty of child abduction.

¶ 47 Our supreme court considered an as-applied vagueness challenge to this same statute in *Woodrum*. Similar to the case at bar, the *Woodrum* defendant argued that, because he was not provided notice of the unlawful purpose, he lacked adequate notice to prepare his defense. *Woodrum*, 223 Ill. 2d at 303. The court, relying on *Williams*, noted that it had previously held that the phrase "other than a lawful purpose" was not unconstitutionally vague on its face because, given its ordinary meaning, it implied "actions that violate the Criminal Code." *Woodrum*, 223 Ill. 2d at 303 (citing *Williams*, 133 Ill. 2d at 453-54). The court then reasoned that the phrase alone "gives adequate notice of the conduct that will subject a person to criminal penalties." *Woodrum*, 223 Ill. 2d at 303. After finding that the phrase gives adequate notice, the court noted that, in that particular case, the defendant's unlawful purpose or intent was clear from the detailed statement he provided to police. *Woodrum*, 223 Ill. 2d at 303. Defendant urges us to find this small portion of the court's opinion to be dispositive of the case before us, as he did not make such an incriminating statement to the police regarding his criminal intent, or lack thereof. However, in *Woodrum*, the court did not state or imply that, short of a clear statement of unlawful intent, its decision would have been different. *Woodrum*, 223 Ill. 2d at 303. We decline to extend *Woodrum* in such a manner.

¶ 48 Moreover, because law enforcement, judges, and juries have clear guidelines as to what conduct is criminal, there is no danger of arbitrary and discriminatory enforcement in this case. See *C.E.*, 161 Ill. 2d at 227 (the second requirement of due process is that the statute must provide explicit standards to police officers, judges and juries who apply the statute in order to prevent its arbitrary and discriminatory enforcement). The phrase "other than a lawful purpose" in the child abduction statute implies actions which violate the Criminal

-11-

Code. *Williams*, 133 Ill. 2d at 453-54. As such, the statute provided sufficient guidance to law enforcement, judges, and the jury as to what conduct is criminal. In addition, while the jurors were not presented with a specific underlying offense which was alleged to have motivated defendant's actions, they were presented with clear parameters defining the boundaries of the offense, that is, whether defendant attempted to lure J.H. into his vehicle in order to commit actions which would violate the Criminal Code.

¶ 49    The phrase "for other than a lawful purpose" informed defendant that if his act of luring was committed with a criminal intent, he was guilty of the offense of child abduction. Accordingly, because the child abduction statute is not ill-defined or lacking all objective criteria, we will not declare it to be unconstitutionally vague so as to violate defendant's due process rights.

¶ 50                                    III. The Bill of Particulars

¶ 51    Next, defendant contends that the trial court erred when it denied defendant a bill of particulars. Specifically, defendant argues that, because the indictment failed to allege the specific unlawful purpose which defendant possessed, he was deprived of his ability to prepare and present an adequate defense when the court denied his motion for a bill of particulars. We disagree.

¶ 52    The trial court may require the State to furnish a bill of particulars when an indictment fails to sufficiently specify the particulars of the charged offense in order to enable a defendant to prepare a defense. 725 ILCS 5/111-6 (West 2008). "The purpose of a bill of particulars is to give the defendant notice of the charge and to inform the defendant of the particular transactions in question, thus enabling preparation of a defense." *Woodrum*, 223 Ill. 2d at 301-02. " '[W]here an indictment sufficiently informs the defendant of the offense charged against him there is no need for a bill of particulars ***.' " *People v. Lego*, 116 Ill. 2d 323, 337 (1987) (quoting *People v. Tsukas*, 406 Ill. 613, 616-17 (1950)). We review the trial court's decision on a motion for a bill of particulars for abuse of discretion. *Lego*, 116 Ill. 2d at 336-37. An abuse of discretion is where the trial court's ruling is "arbitrary, fanciful, [or] unreasonable," or where no reasonable person would take the view adopted by the trial court. *People v. Hall*, 195 Ill. 2d 1, 20 (2000).

¶ 53    A person commits child abduction by, in relevant part, intentionally luring or attempting to lure a child under 16 years of age into a motor vehicle without the consent of a parent or lawful custodian for other than a lawful purpose. 720 ILCS 5/10-5(b)(10) (West 2008).

¶ 54    Here, the indictment charging defendant with child abduction sufficiently informed defendant of the nature and elements of the charged offense. It precisely tracked the statutory language of the child abduction statute by alleging that defendant committed the offense of child abduction in that:

    "He, intentionally attempted to lure [J.H.], a child under the age of 16, into a motor vehicle without the consent of her parent, or lawful custodian, for other than a lawful purpose, in violation of [the child abduction statute]."

¶ 55    Prior to trial, defendant filed a motion for a bill of particulars, requesting the court to order the State to produce a bill of particulars stating the following:

-12-

"1. The exact statement(s) or action(s), whether verbal or not, which form the indicate [*sic*] the 'other than a lawful purpose;'

2. The unlawful purpose the Defendant was going to commit upon the minor;

3. The name and address of every person relied on by the prosecution whom heard [*sic*] the communication describing or stating the unlawful purpose ***."

¶ 56    The State filed a response to this motion, stating:

"1. The People will rely on the statements and actions of the defendant when he confronted [J.H.] on February 20, 2008 at approximately 3:15 P.M. in the area of 9500 S. Oak Park Avenue, Oak Lawn, Illinois as summarized in the Oak Lawn Police Department reports that were previously tendered to defense counsel.

2. The People object. See *People v. Joyce*, 210 Ill. App. 3d 1059, 569 N.E.2d 1189 (2nd Dist. 1991).

3. The People will provide a list of all witnesses and their addresses in a formal answer to discovery."

¶ 57    In *Joyce*, the defendant was convicted of child abduction. *Joyce*, 210 Ill. App. 3d at 1065. Defendant's indictment alleged:

"[T]he defendant intentionally attempted to lure M.W., a child under age 16, into a motor vehicle for other than a lawful purpose and without the consent of a parent." *Joyce*, 210 Ill. App. 3d at 1062.

¶ 58    Prior to trial, the defendant sought a motion for a bill of particulars seeking, in pertinent part, information as to "the unlawful purpose that the defendant allegedly harbored at the time." *Joyce*, 210 Ill. App. 3d at 1062. The trial court ordered the State to amend its indictment to include the possible unlawful purposes harbored by the defendant, and the State responded by adding a list of 29 possible unlawful purposes. *Joyce*, 210 Ill. App. 3d at 1062. This list included homicide, kidnapping, sexual assault, tattooing the body of a minor, and violation of bail bond. *Joyce*, 210 Ill. App. 3d at 1062. On appeal, defendant argued, in pertinent part, that the court erred in failing to dismiss the indictment because, "although the indictment tracks the language of section 10-5(b)(10), the offense is one which requires greater specificity in the charge." *Joyce*, 210 Ill. App. 3d at 1066. Initially, the appellate court admonished the State for its "cavalier" response to the defendant's motion for a bill of particulars. *Joyce*, 210 Ill. App. 3d at 1067. Then, the court noted that "[the] indictment here initially tracked the statutory language of section 10-5(b)(10)." *Joyce*, 210 Ill. App. 3d at 1067. The court considered the facts of *Williams*, wherein the defendant's indictment, like the one at question in *Joyce*, "tracked the language of section 10-5(b)(10)." *Joyce*, 210 Ill. App. 3d at 1067. Specifically, the *Williams* indictment charged that " 'the defendant attempted to lure a child under the age of 16 into his car without the consent of her parent or legal guardian 'for other than a lawful purpose.' " *Joyce*, 210 Ill. App. 3d at 1067 (citing *Williams*, 133 Ill. 2d 451). "The indictment did not specify any particular unlawful purpose harbored by the defendant at the time he allegedly attempted to lure the child into his car. ([*Williams*,] 133 Ill. 2d 451.)" *Joyce*, 210 Ill. App. 3d at 1067. Ultimately, the *Joyce* court found "the indictment that the supreme court approved in *Williams* was no more specific than the one here. We therefore find that the defendant was sufficiently apprised of

-13-

both the nature and the elements of the offense. See *Williams*, 133 Ill. 2d at 454." *Joyce*, 210 Ill. App. 3d at 1067.

¶ 59　　While we are mindful that the precise issue in *Joyce* was whether the indictment should have been dismissed, which differs from the issue at bar regarding whether the motion for the bill of particulars regarding the indictment should have been allowed, we find the reasoning in *Joyce* instructive. The core of the issue here is whether defendant was sufficiently informed of the nature and elements of the charged offense. We, like the *Joyce* court, are presented with a situation in which the indictment for the crime of child abduction precisely mirrors the statute for child abduction. The indictment in the case at bar contains the same amount of specificity as that in *Joyce* and, like the *Joyce* court, we believe it informed defendant of the nature and elements of the charged offense. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a bill of particulars where defendant was fairly apprised of the nature of the charges against him.

¶ 60　　　　　　　　　　IV. Cross-Examination of Officer Williams

¶ 61　　Next, defendant contends that the trial court erred where it did not allow defendant to cross-examine Officer Williams regarding his search of defendant's van. Specifically, defendant argues that the trial court violated his sixth amendment right to confrontation when, after having testified that he searched defendant's van, the trial court did not allow defendant to cross-examine Officer Williams regarding what he found inside the van. We disagree.

¶ 62　　Both the federal and state constitutions protect a defendant's right to cross-examine a witness. *People v. Ramey*, 152 Ill. 2d 41, 67 (1992); *People v. Nutall*, 312 Ill. App. 3d 620, 626 (2000); U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. However, a trial court may impose reasonable limits on cross-examination "based on concerns about, among other things, *** interrogation[s] that [are] *** only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Cross-examination is generally limited in scope to the subject matter of the direct examination of the witness and to matters affecting the credibility of the witness. *People v. Terrell*, 185 Ill. 2d 467, 498 (1998). Although a defendant is afforded wide latitude when conducting cross-examination, "this important principle is subject to limitations where the evidence sought provides an insufficient nexus to the proposition it supposedly supports." *Nutall*, 312 Ill. App. 3d at 628. "It is not error for a trial court to refuse to permit a cross-examiner to go beyond the scope of the direct examination in an effort to present his theory of the case." *People v. Hosty*, 146 Ill. App. 3d 876, 882-83 (1986). The scope of cross-examination is within the sound discretion of the trial court, and we will only disturb its ruling where there has been a clear abuse of discretion resulting in manifest prejudice to the defendant. *People v. Kliner*, 185 Ill. 2d 81, 130 (1998). With these principles in mind, we determine that the trial court did not abuse its discretion in limiting the cross-examination of Officer Williams.

¶ 63　　Here, Officer Culhane testified that when J.H. and her mother came to the Oak Lawn police station, he took them to the parking lot where they identified defendant's van as that which defendant had been driving when he spoke to J.H. earlier in the day. Officer Williams

testified that he searched the van. The portion of trial testimony that is the subject of defendant's complaint is as follows:

"Q. So did you search that van?

A. [OFFICER WILLIAMS:] Yes, I did.

Q. And in that van did you find any knives?

STATE'S ATTORNEY: Objection, relevance.

THE COURT: Sustained.

Q. [DEFENSE ATTORNEY:] Did you find any weapons?

STATE'S ATTORNEY: Objection, relevance.

THE COURT: Sustained.

Q. [DEFENSE ATTORNEY:] Did you find any condoms?

STATE'S ATTORNEY: Objection, relevance.

THE COURT: Sustained.

Q. [DEFENSE ATTORNEY:] Did you find any pornography?

STATE'S ATTORNEY: Objection, relevance.

THE COURT: Sustained.

Q. [DEFENSE ATTORNEY:] Did you find any duct tape?

STATE'S ATTORNEY: Objection, relevance.

THE COURT: Sustained.

Q. [DEFENSE ATTORNEY:] Did you find anything unusual in that van?

STATE'S ATTORNEY: Objection, relevance.

THE COURT: Overruled.

[OFFICER WILLIAMS:] There is a lot of things in the van. I don't know what a lot of them were, so it depends on what your term for unusual for the van is. I don't know what is unusual for that van to have in it.

Q. [DEFENSE ATTORNEY:] Did you find anything dangerous in that van?

STATE'S ATTORNEY: Objection, relevance.

THE COURT: Sustained."

¶ 64    The court ruled correctly where the line of inquiry engaged in by defendant on cross-examination went beyond the scope of the original direct examination in an effort to inject defendant's theory of the case into cross-examination. The State's direct examination of Officer Williams was limited and took the jury through the steps Officer Williams went through in his attempts to locate defendant, his conversation with defendant about the events on February 20, his attempts to recover the video surveillance tapes from the Lucky Burrito, and J.H.'s identification of defendant. On cross-examination, however, defense counsel questioned Officer Williams about the search of the van itself, a subject which had not been addressed or mentioned during direct examination.

¶ 65    Defendant argues on appeal that its questioning regarding what Officer Williams may

have found in the van was an "attempt to show a lack of an unlawful purpose." He argues:

> "Certainly if Williams had found a knife, a weapon of any kind, condoms, pornography, duct tape, or anything at all dangerous in the van, these items would have been relevant to show that [defendant] acted for an unlawful purpose in attempting to lure J.H. to the van. As such, the lack of absence of any of these items in the van was relevant to show that [defendant] had no unlawful purpose in attempting to lure J.H. to the van."

We disagree. It is clear that the additional questions defendant wished to ask Officer Williams on cross-examination were not designed to "explain, qualify, discredit, or destroy his direct testimony." *People v. Jones*, 174 Ill. App. 3d 737, 748 (1988) (cross-examination should be limited to "the subject matter inquired into on direct examination," and "those circumstances within the knowledge of the witness which explain, qualify, discredit, or destroy his direct testimony although they may incidentally constitute new matter which aids the cross-examiner's case" (internal quotation marks omitted) (quoting *People v. Williams*, 66 Ill. 2d 478, 486 (1977))). Rather, the line of questioning at issue was designed solely to present defendant's theory of the case. See *Hosty*, 146 Ill. App. 3d at 882-83 ("It is not error for a trial court to refuse to permit a cross-examiner to go beyond the scope of the direct examination in an effort to present his theory of the case.").

¶ 66    Moreover, defendant was given an opportunity to cross-examine Officer Williams. Defendant did so at length, asking Officer Williams questions regarding his interactions with J.H. and her mother in the parking lot after J.H. and her mother had followed defendant in the van, questions about steps taken to locate the van, about defendant's eventual arrival at the police station, about the specificities of the lineup in which J.H. identified defendant, and about defendant's appearance when he arrived at the police station. We find no abuse of discretion where the trial court properly limited cross-examination to the subject matter of the direct examination.

¶ 67                                        V. Sexually Motivated Crime

¶ 68    Next, defendant contends that the trial court erred at sentencing in its determination that defendant's offense of child abduction was sexually motivated. Specifically, defendant argues that none of the facts of the underlying offense indicated that he acted with the intent to engage in behavior of a sexual nature. He points out that, because of the trial court's determination that his offense was sexual in nature, he is required to register as a sex offender. Defendant asks this court to reverse the trial court's finding in this regard and order that defendant is not required to register as a sex offender.

¶ 69    The Sex Offender Registration Act (Registration Act) requires persons convicted of child abduction under section 10-5(b)(1) of the Criminal Code to register as sex offenders "provided the offense was sexually motivated." 730 ILCS 150/2(B)(1.9) (West 2008). "Sexually motivated" means that one or more of the "facts of the underlying offense indicates conduct that is of a sexual nature or that shows an intent to engage in behavior of a sexual nature." 20 ILCS 4026/10(e) (West 2008). Before requiring a defendant to register as a sex offender, a trial court must make a specific determination regarding whether the crime was sexually motivated. *People v. Black*, 394 Ill. App. 3d 935, 940 (2009).

-16-

¶ 70 　　At the sentencing hearing in the case at bar, the trial court informed defendant that registering as a sex offender was a collateral sentencing consequence of the crime he committed. The court explained that it was required to make a specific determination regarding whether defendant's crime was sexually motivated. It noted:

> "[THE COURT]: And I can certainly think of offenses, for example, perhaps a kidnaping of a child, where an offender attempts to lure or does, in fact, lure a child into a vehicle and then takes that child to another place for ransom. In that factual situation, I would be willing to say that offense was not sexually motivated. However, in this case, I'm not. I believe this offense was solely sexually motivated; and that, Mr. Velez, you, therefore, will be required to register as a sex offender."

¶ 71 　　The trial court did not err where the statutory test that "one or more of the facts of the underlying offense indicates conduct that is of a sexual nature or that shows an intent to engage in behavior of a sexual nature" is met. 20 ILCS 4026/10(e) (West 2008); *Black*, 394 Ill. App. 3d at 940. J.H. testified that she saw defendant do a "double take" and look at her as she walked down the street. He followed J.H. in his van, motioning for her to come toward the van. Twice he offered her a ride home, even though she attempted to ignore him by not verbally responding to him, putting up her hood, and walking faster. J.H. was a 14-year-old child who had just gotten out of school and was carrying her bookbag. Defendant, a complete stranger to her, suggestively referred to her as "baby girl" and doggedly pursued her in order to convince her to get into his van. We think the low threshold is met, that is, one or more of the facts of the underlying offense indicates conduct that is of a sexual nature or that shows an intent to engage in behavior of a sexual nature. See 20 ILCS 4026/10(e) (West 2008).

¶ 72 　　Defendant's argument that, because there were no "sexual innuendos" or touching, this offense should not be characterized as sexually motivated, is unpersuasive. The purpose of the Registration Act is to protect children from sex crimes and to aid law enforcement by letting them know where sexual offenders live. *In re Phillip C.*, 364 Ill. App. 3d 822, 827-28 (2006). The Registration Act does not require there to be actual sexual contact or an overt sexual act. Rather, the Registration Act specifies that conduct which "shows an intent to engage in behavior of a sexual nature" is sufficient to require registration under the Registration Act.

¶ 73 　　Defendant also urges us to consider that the court's comments regarding defendant's prior acts were improper and tend to show that the trial court relied on improper evidence in its determination that defendant's crime was sexually motivated. We disagree, as nothing in the record indicates that the sentencing court considered anything aside from the facts of the offense itself in making its finding that the offense was sexually motivated.

¶ 74 　　In determining whether an offense is sexually motivated, a trial court is directed to examine the "facts of the underlying offense." 20 ILCS 4026/10(e) (West 2008). At sentencing, the State presented evidence that, six years prior to his arrest in this case, defendant was arrested for solicitation of a prostitute. That case was later dismissed. Defendant takes issue with the following comment the court made when sentencing defendant:

"[THE COURT]: [W]hat is significant about the prostitution caper is that he has a dark, secret predator side to him that apparently he does not show to those around him in my opinion."

Defendant urges us to find that this comment shows the court considered more than just the facts of the underlying offense in its determination that the offense was sexually motivated. We find no error, however, where the court made this statement during the earlier part of the hearing when it was fashioning defendant's overall sentence, not when it was making the separate determination regarding defendant's sexual motivation.

¶ 75                          VI. Defendant's Procedural Due Process Rights

¶ 76      Finally, defendant contends he was deprived of his right to due process where inadequate procedural safeguards were in place during his hearing on sexual motivation, allowing the court to arbitrarily find his offense to be sexually motivated pursuant to the Registration Act. 730 ILCS 150/2(B)(1.9) (West 2008). Specifically, defendant argues that the "lack of evidentiary standards and the absence of a standard of proof failed to adequately protect against the risk of an erroneous deprivation of [his] rights." We disagree, as defendant cannot make the requisite showing that the registration requirements deprive him of a protected liberty interest.

¶ 77      A statute is presumed to be constitutional, and, thus, the party challenging it bears the burden of clearly demonstrating its invalidity. See *Cryns*, 203 Ill. 2d at 290; accord *Bailey*, 167 Ill. 2d at 225; *Zapata*, 347 Ill. App. 3d at 966. We are duty-bound to construe a statute in a manner that upholds its validity and constitutionality, if this can reasonably be done. See *Cryns*, 203 Ill. 2d at 290-91; accord *In re C.E.*, 161 Ill. 2d at 227; *Cosby*, 305 Ill. App. 3d at 224 (we must affirm statute's constitutionality and validity whenever possible). In examining a statute's constitutionality, we employ a *de novo* standard of review. See *Zapata*, 347 Ill. App. 3d at 967.

¶ 78      An attack on procedural due process focuses on the statute's specific procedures and whether the statute provides an "opportunity to be heard at a meaningful time and in a meaningful manner." *In re Phillip C.*, 364 Ill. App. 3d at 831; accord *In re P.H.*, 145 Ill. 2d 209, 235 (1991). Procedural due process "requires that a person in danger of serious loss of life, liberty or property be given notice of the case against him and opportunity to meet it." (Internal quotation marks omitted.) *People v. Stanley*, 369 Ill. App. 3d 441, 448 (2006). "Challenges based on procedural due process focus on the procedures employed by a statute and whether the statute provides an opportunity to be heard at a meaningful time and in a meaningful manner." *Stanley*, 369 Ill. App. 3d at 448. A procedural due process challenge has two steps: (1) determine whether an individual has been deprived of life or a protected liberty or property interest; and (2) determine what process is due before such a deprivation may occur. *Stanley*, 369 Ill. App. 3d at 448.

¶ 79      Accordingly, our first step in defendant's due process challenge is to determine whether defendant has been deprived of a protected liberty or property interest by the requirements imposed pursuant to the Registration Act. We find that he has not. Defendant argues that he will be stigmatized by having to register as a sex offender and, in addition to this stigma, the

actual registration requirements themselves deprive him of both liberty and property interests. See *In re J.R.*, 341 Ill. App. 3d 784, 799 (2003) (reputation alone is neither liberty nor property interest sufficient to invoke the procedural protection of the due process clause. Rather, a defendant must show both (1) the utterance of a statement that is sufficiently derogatory to injure his reputation that is capable of being proved false, and that he claims is false; and (2) some tangible and material state-imposed burden or alteration of his status or of a right in addition to the stigmatizing statement. (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976))).

¶ 80      The registration requirements he mentions are as follows: An individual must register in person with the State and local police within 10 days of the start of his probation or discharge from the Illinois Department of Corrections. 730 ILCS 150/3, 4, 5 (West 2008). Registrants must provide identification, proof of residence, tender a written statement that he is a sex offender, provide fingerprints, submit a current photograph, and pay a fee. 730 ILCS 150/3, 8 (West 2008). Registrants must also complete an annual address verification, report in person annually, report a change of address within 10 days, and report out-of-state schooling or employment. 730 ILCS 150/5-10, 6, 6-5, 8-5 (West 2008). The duty to register lasts 10 years after parole, discharge, or release, or in the case of a sexual predator or a sexually dangerous person, for life. 730 ILCS 150/7 (West 2008). Any failure to comply with any of the registration requirements, or with any of the time limitations, is a Class 4 felony, carrying a sentence of one to three years' imprisonment. 730 ILCS 150/10 (West 2008); 730 ILCS 5/5-8-1(a)(7) (West 2008).

¶ 81      Illinois courts have held that registration pursuant to the Registration Act does not affect a protected liberty or property interest. *In re J.R.*, 341 Ill. App. 3d at 799; *In re T.C.*, 384 Ill. App. 3d 870 (2008) (juvenile offender not deprived of liberty interest by requirement that he register as a sex offender for the remainder of his natural life); *People v. Stork*, 305 Ill. App. 3d 714 (1999) (finding requirements under the Registration Act did not implicate any protected liberty interests); *Stanley*, 369 Ill. App. 3d at 449-50 (finding lifetime registration did not affect a property interest); *In re J.W.*, 204 Ill. 2d 50, 67 (2003) (finding that the registration requirements of the Registration Act do not affect a fundamental right). We find no reason to depart from this line of precedent.

¶ 82      Defendant specifically acknowledges the holding in *In re J.R.*, where this court found a sex offender is not "stigmatized" by the publication of truthful and accurate information about the offender to the public. *In re J.R.*, 341 Ill. App. 3d at 798-99. Defendant, however, believes this rationale does not apply in his situation because, unlike J.R., who was convicted of sexual abuse, he was not convicted of a sex offense. Defendant fails to recognize that he was, in fact, convicted of an offense that is statutorily characterized as a sexual offense. See 730 ILCS 150/2(B)(1.9) (West 2008); see also *Stanley*, 369 Ill. App. 3d at 450 (rejecting the defendant's claim that he should not be categorized as a sexual predator where "sexual predator" is defined by statute, and is a definition he meets).

¶ 83      However, even if we were to find that defendant identified a valid protected liberty interest, we would nevertheless reject defendant's argument that the sex offender registration requirements are so burdensome that they deprive him of a protected liberty interest. This court has rejected this precise argument in *In re T.C.*, where the court noted:

"A liberty interest means 'not only the right of [a] citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation; and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned.' [Citation.] We do not believe that defendant has met his burden of showing that the registration requirements imposed under [the Registration Act] deprive him of a protected liberty interest. [He] has failed to show, beyond merely stating that being required to register as a sex offender for the rest of his natural life places substantial limitations on his liberty by periodically having to report his address, school, and place of employment to authorities [citation], how such registration requirements deprived him of his right to be free from physical restraints, to be free in the enjoyment of his faculties, and to live and work where he will." *In re T.C.*, 384 Ill. App. 3d at 874.

¶ 84    Similarly here, defendant lists the registration requirements and argues that such requirements "deprive [him] of both property and liberty in their most basic forms." He explains this deprivation only by saying that, if disregarded, the requirements "would subject [him] to felony prosecution" and thus alter his legal rights and status. Like the argument in *In re T.C.*, this is clearly not a violation of defendant's due process rights.

¶ 85    Even if we were to find that defendant identified a valid deprivation of a protected liberty interest, we would nevertheless find that he received all the process he was due. This court addressed a similar issue in *In re Phillip C.*, 364 Ill. App. 3d at 831. In that case, the defendant argued, in pertinent part, that the Registration Act violated his procedural due process rights because the registration requirement is automatic under the Registration Act and there is no opportunity to challenge that requirement. *In re Phillip C.*, 364 Ill. App. 3d at 831. The court disagreed, however, because "defendant had a meaningful opportunity to be heard at trial," and to challenge, at trial, whether he committed aggravated kidnaping, the crime which subjected him to registration under the Registration Act. *In re Phillip C.*, 364 Ill. App. 3d at 831. Like *In re Phillip C.*, defendant here had a jury trial and had ample opportunity to challenge whether he committed child abduction. As one of the elements of the crime of child abduction is a demonstration that the luring of the child was done "for other than a lawful purpose," defendant had opportunity at trial to challenge the "other than a lawful purpose," as well as opportunity to show that he was not sexually motivated when luring J.H. Accordingly, we find no violation of defendant's procedural due process guarantees.

¶ 86                                                    CONCLUSION

¶ 87    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 88    Affirmed.