FIRST DIVISION
OCTOBER 30, 2006

No. 1-04-1790

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No.03 CR 28424 |
| | ) | |
| CHRISTOPHER STANLEY, | ) | The Honorable |
| | ) | Marcia B. Orr, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GARCIA delivered the opinion of the court.

Following a bench trial, the defendant, Christopher Stanley, was convicted of three counts of attempt aggravated criminal sexual assault and one count of aggravated unlawful restraint. He was sentenced to concurrent prison terms of six years on the merged counts of attempt aggravated criminal sexual assault and five years on aggravated unlawful restraint. Because he was convicted of attempt aggravated criminal sexual assault, the defendant was required to register as a "sexual predator" for the rest of his life. On appeal, the defendant challenges the sufficiency of the evidence to support his aggravated unlawful restraint conviction. He also challenges the constitutionality of the Sex Offender Registration Act (Registration Act) (730 ILCS

150/1 <u>et seq.</u> (West 2004)) and the Sex Offender and Child

Murderer Community Notification Law (Notification Law) (730 ILCS

152/101 <u>et seq.</u> (West 2004)).  Finally, he argues he is entitled

to a $100 credit against his assessed fines.[1]

BACKGROUND

At trial, the State presented evidence to establish that

E.H., the victim in this case, was jogging in Evanston at 5:00

p.m. on November 23, 2003, when she encountered the defendant

running alongside her.  It was raining outside and although the

defendant was also jogging, he was not wearing running clothes.

The victim engaged the defendant in conversation in order to make

herself more comfortable with the situation.  After conversing

for a few minutes, the victim ran ahead of the defendant.  The

defendant then grabbed the victim from behind, dragged her to an

alley or parking lot next to an auto body shop and, after she

screamed, threatened to slit her throat.  The victim, however,

never saw a knife.  He also told her she was "going to die."  The

defendant pulled down her shorts and underwear so that her

backside was exposed and unzipped his pants.  The victim begged

---

[1] In his opening brief, the defendant also challenged the

sufficiency of the trial court's admonishments of his appellate

rights.  However, he withdrew that contention in his reply brief.

him to stop and struggled with him. The defendant punched the victim twice in the face and once in the stomach and eventually ran away. The victim received several nicks, cuts, and bruises to her face and body.

Eyewitness Matthew Beck was in his apartment overlooking the auto body shop and called the police after he heard someone screaming and saw a man lying on top of a person. Beck went outside after he saw the victim in the street trying to flag down a car. He called the police again. The police arrived shortly thereafter and took a description of the defendant from the victim. At the scene, the police recovered a cellular phone from a muddy puddle.

A few hours later, Beck heard a vehicle outside his apartment. He looked out his window and saw a red and cream-colored pickup truck. He also saw the man he had previously seen attacking the victim. The man appeared to be looking for something. Beck called the police and gave them this information.

Police officers were able to trace the recovered cellular phone to Stellar Productions, an event equipment rental company where the defendant worked. On November 25, 2003, the police spoke to the defendant's supervisor, Michael Glabowicz, who informed them that the defendant had told him he lost his

cellular phone on November 23 while at a jobsite in Winnetka. Glabowicz gave the officers a description of the defendant and of his vehicle. At trial, Glabowicz described the defendant's vehicle as a light-colored pickup truck with maroon or red side panels. He also acknowledged that the defendant had been working 50 to 60 hours a week in November 2003 and that some of the defendant's paychecks had bounced.

After speaking to Glabowicz, the officers retrieved a photograph of the defendant. After the victim tentatively identified the defendant as the offender from an array, the officers went to the defendant's home in Zion. The defendant agreed to accompany the officers to the Evanston police station, where he was read his Miranda rights. The defendant initially told the officers that he lost his cellular phone at a Winnetka jobsite. However, when confronted with information that his phone had been recovered at the scene of an attack in Evanston and that a man fitting his description had been seen by an eyewitness driving a vehicle similar to his, the defendant put his head down and started to cry.

The defendant told the officers he had been experiencing troubles with his ex-wife; he believed she had begun working for an escort service. His ex-wife also had been harassing him over the phone, telling him she was moving with his two-year-old son

4

to Florida. He left the Winnetka jobsite on November 23, 2003, and went for a drive, ending up in Evanston. He decided to go for a jog and was approached by the victim. The victim reminded him of his ex-wife, bothered him, and would not leave him alone. He "just snapped" and grabbed her from behind, walked her toward a parking lot, and fell on top of her. He denied striking the victim, pulling down her shorts, or unzipping his pants. When he went back to the jobsite, he realized his cellular phone was missing. He returned to the scene of the attack to look for it, but could not find it.

The defendant was placed in a lineup in the early hours of November 26, 2003, where the victim identified him without hesitation. He then made a statement similar to the one above in the presence of Evanston police officer Joe Dugan and Assistant State's Attorney Beth Neslin. The defendant added that while he had been on top of the victim, he had a pocket knife with a small blade pressed against her cheek. He said he covered most of the blade with his thumb. The defendant either threw the knife away or lost it.

The defendant's trial testimony was similar to the statements he had previously made. He testified that on November 23, 2003, he had been working "crazy" hours and several of his paychecks had bounced. He was also in an "ugly" situation with

his ex-wife.  He decided to go for a jog to blow off steam when he encountered the victim.  Although he initially wanted to talk to her, he became upset because "she was all in [his] business." He also felt rejected when she ran ahead of him.  When he grabbed her, he "just lost [his] temper" because he felt she had been rude to him and reminded him of his ex-wife.  He threw her to the ground to scare her and struck her once in the mouth to quiet her.  The defendant denied wanting to have sex with the victim. He also denied pulling down her shorts or unzipping his pants. He could not recall telling her that he was going to slit her throat.  He eventually stopped because he looked into the victim's face and realized he was lashing out at the wrong person.  He expressed his remorse for his actions and testified that he did not mean to hurt anyone.

The defendant also testified he told the victim he had a knife and would cut her if she moved.  He admitted at trial that he did have a pen knife or pocket knife, which he described as "[j]ust a little -- like Swiss army pocket knife" or "one of those Boy [Scout] knives *** [with] scissors in it *** [and] all that stuff in it."  He acknowledged it was a pocket knife that came down into a casing.  He testified that he held the knife to her cheek or jaw, but kept his thumb over most of the blade.

The trial court found the defendant guilty of three counts

6

of attempt aggravated criminal sexual assault as well as one count of aggravated unlawful restraint based on his use of the pocket knife. He received a sentence of six years on the merged counts of attempt aggravated criminal sexual assault and a concurrent sentence of five years on the aggravated unlawful restraint count. The trial court assessed numerous fees and fines, ordered him to submit a DNA sample, and explained that he would be required to register in the sex offender registry for the rest of his life.

ANALYSIS

I

The defendant's first contention on appeal is that the State failed to prove beyond a reasonable doubt that the pocket knife he used constituted a "deadly weapon." Accordingly, he argues that his conviction for aggravated unlawful restraint should be reduced to unlawful restraint.

When a defendant challenges the sufficiency of the evidence, the issue is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Collins, 106 Ill. 2d 237, 261, 478 N.E.2d 267 (1985); People v. Blanks, 361 Ill. App. 3d 400, 412, 837 N.E.2d 118 (2005). A criminal conviction will not be set

aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant's guilt. Collins, 106 Ill. 2d at 261; Blanks, 361 Ill. App. 3d at 412.

The defendant in this case was charged with and convicted of aggravated unlawful restraint. The defendant contends that the evidence falls short of the required proof that he used a deadly weapon. The indictment specifically alleged that the defendant "committed the offense of aggravated unlawful restraint in that he, knowingly without legal authority detained [the victim] while armed with a deadly weapon, to wit: a knife." See 720 ILCS 5/10-3.1(a) (West 2004).

A deadly weapon is one that is "dangerous to life" or "one likely to produce death or great bodily injury," or one that "may be used for the purpose of offense or defense and capable of producing death." People v. Dwyer, 324 Ill. 363, 364, 155 N.E. 316 (1927). " 'Some weapons are deadly per se; others, owing to the manner in which they are used, become deadly. A gun, pistol, or dirk-knife is itself deadly, while a small pocket knife, a cane, a riding whip, a club or baseball bat may be so used as to be a deadly weapon.' " (Emphasis added.) Blanks, 361 Ill. App. 3d at 411, quoting Dwyer, 324 Ill. at 364-65. It is for the trier of fact to determine whether the weapon used is a deadly weapon based on the manner of its use and the circumstances of

8

the case.  Blanks, 361 Ill. App. 3d at 411-12.

In People v. Carter, 410 Ill. 462, 102 N.E.2d 312 (1951), our supreme court addressed whether a small pocket knife, with a 2-inch blade, constituted a dangerous and deadly weapon.  The court held that although it was not a per se deadly or dangerous weapon, it was used as such where the defendant used the knife to cut the victim above her eye, a "vital part of her body ***." Carter, 410 Ill. at 466.

In this case, we find the facts, when considered in the light most favorable to the State, sufficient to support the defendant's conviction.  The defendant unlawfully restrained the victim while armed with pocket knife.  The pocket knife, while not deadly per se, was capable of being used as a deadly weapon. Carter, 410 Ill. at 465.  The record indicates the defendant held the knife against the victim's jaw or cheek; clearly, a vital part of her body.  Further, although the defendant covered most of the blade with his thumb, the victim testified that he threatened to slit her throat and told her she was going to die. The defendant acknowledged at trial that he threatened to cut her if she moved.  On this record, the trial court was justified in finding that the pocket knife constituted a deadly weapon based on the manner in which it was used and in light of the circumstances of the case.

II

The defendant next contends that certain provisions of the Registration Act (730 ILCS 150/1 et seq. (West 2004)) and Notification Law (730 ILCS 152/101 et seq. (West 2004)) violate his right to procedural due process under both the federal and state constitutions.  He specifically challenges his designation as a "sexual predator" under the Registration Act and its requirement that he register for the rest of his life.  He also challenges the corresponding provisions of the Notification Law, which require that his personal information be publicly disseminated, including over the Internet.  He argues he should have been provided an opportunity to be heard prior to being required to register as a sexual predator for life and prior to his personal information being posted online.  The defendant argues the statutes are facially unconstitutional as well as unconstitutional as applied to him.

As noted by our supreme court in People v. Cornelius, 213 Ill. 2d 178, 181, 821 N.E.2d 288 (2004), the Registration Act and Notification Law[2] "operate in tandem" and provide a

---

[2] The Registration Act and Notification Law have undergone numerous amendments in recent years.  We address the statutes as they read at the time the defendant was convicted as the

"comprehensive scheme for the registration of Illinois sex offenders and the dissemination of information about these offenders to the public." Numerous constitutional challenges to various provisions of the Registration Act and/or Notification Law in their various forms have been addressed and rejected by the courts of this state. See, e.g., Cornelius, 213 Ill. 2d 178; In re J.W., 204 Ill. 2d 50, 787 N.E.2d 747 (2003); People v. Malchow, 193 Ill. 2d 413, 739 N.E.2d 433 (2000); People v. Beard, 366 Ill. App. 3d 197, 851 N.E.2d 141 (2006); In re Phillip C., 364 Ill. App. 3d 822, 847 N.E.2d 801 (2006); People v. Grochocki, 343 Ill. App. 3d 664, 796 N.E.2d 153 (2003); In re D.R., 342 Ill. App. 3d 512, 794 N.E.2d 888 (2003); In re J.R., 341 Ill. App. 3d 784, 793 N.E.2d 687 (2003); People v. Marsh, 329 Ill. App. 3d 639, 768 N.E.2d 108 (2002); People v. Logan, 302 Ill. App. 3d 319, 705 N.E.2d 152 (1998); but see People v. Johnson, 363 Ill. App. 3d 356, 843 N.E.2d 434 (2006), appeal allowed, 218 Ill. 2d 550 (2006).

The definition of "sex offender" under the Registration Act includes those charged and convicted of any sex offense or attempted sex offense. 730 ILCS 150/2(A)(1)(a) (West 2004). "Sex offense" under the Registration Act is defined as a

_____

amendments are not relevant to the outcome of this case.

11

violation of enumerated sections of the Criminal Code of 1961, including criminal sexual assault and aggravated criminal sexual assault. 730 ILCS 150/2(B)(1) (West 2004). Relevant to this case, a "sexual predator" as defined by the Registration Act includes any person, who, after July 1, 1999, is convicted of an enumerated offense or the attempt of an enumerated offense, including aggravated criminal sexual assault. 730 ILCS 150/2(E)(1) (West 2004); see also In re J.W., 204 Ill. 2d at 63-64. Sex offenders or sexual predators are required to register with municipal or county law enforcement officials within 10 days of establishing residency in that municipality or county. 730 ILCS 150/3 (West 2004). A sex offender must register for 10 years following his or her conviction while a sexual predator must register for the rest of his or her life. 730 ILCS 150/7 (West 2004); In re J.W., 204 Ill. 2d at 64-65.

The Notification Law requires the Department of State Police to maintain the Statewide Sex Offender Database for the purpose of identifying sex offenders and making information about them available to various aspects of the community. 730 ILCS 152/115(a) (West 2004). As of July 1, 2000, the Department of State Police is required to make the information contained in the Statewide Sex Offender Database available on the Internet through the Department's homepage. 730 ILCS 152/115(b) (West 2004); see

Cornelius, 213 Ill. 2d at 183; Grochocki, 343 Ill. App. 3d at 667 (both addressing the Internet provision of section 115(b)); see also 20 Ill. Adm. Code §1282.30(g)(2) (2004) amended at 27 Ill. Reg. 16152 (eff. September 30, 2003) (setting forth requirements and procedures for providing sex offender information over the Internet).

The defendant in this case is included in the Statewide Sex Offender Database and information about him, including his name, address, and photograph, is available on the Department of State Police website. Under his name, the words "Sexual Predator" appear in red letters. The defendant does not dispute his inclusion in the Statewide Sex Offender Database or the general dissemination of that information over the Internet. Rather, the defendant disputes his designation as a sexual predator, the appearance of that term under his name and photograph on the Department website, and the requirement that he register for the rest of his life. The defendant argues that because the term "sexual predator" brands him forever as a danger to the community, and connotes he has multiple convictions for sex offenses, or has recidivist tendencies, due process entitles him to a hearing to contest those connotations.

Our statutes are presumed to be constitutional and the burden of establishing a statute's invalidity falls on the party

challenging it.  Cornelius, 213 Ill. 2d at 189; In re J.R., 341 Ill. App. 3d at 790.  The constitutionality of a statute is reviewed de novo.  In re J.W., 204 Ill. 2d at 62.

"Procedural due process requires that a person in danger of serious loss of life, liberty or property be given notice of the case against him and opportunity to meet it."  Beard, 366 Ill. App. 3d at 200, citing Mathews v. Eldridge, 424 U.S. 319, 348, 47 L. Ed. 2d 18, 41, 96 S. Ct. 893, 909 (1976).  Challenges based on procedural due process focus on the procedures employed by a statute and whether the statute provides an opportunity to be heard at a meaningful time and in a meaningful manner.  In re Phillip C., 364 Ill. App. 3d at 831.  The first step in a procedural due process challenge is to determine whether an individual has been deprived of life or a protected liberty or property interest.  See In re Phillip C., 364 Ill. App. 3d at 831.  The second step is to determine what process is "due" before such a deprivation may occur.  See In re Phillip C., 364 Ill. App. 3d at 831-32.

Under our federal constitution, "[individuals] who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme."  Connecticut Department of Public Safety v. Doe, 538 U.S. 1, 8, 155 L. Ed. 2d 98, 105, 123 S. Ct.

14

1160, 1165 (2003). In Doe, the United States Supreme Court addressed whether the registration and notification requirements of the Connecticut sex offender statute violated procedural due process under the federal constitution. The Connecticut statute required persons convicted of certain sex offenses to register with the Department of Public Safety, which in turn compiled a sex offender registry available over the Internet. Some offenders were required to register for 10 years while others were required to register for life. The website included a disclaimer indicating that the Department had not determined whether any particular offender was currently dangerous. The respondent in that case argued that due process entitled him to notice and a hearing on whether he was currently dangerous before his information could be included in the online registry.

The Supreme Court, without reaching the question of whether the inclusion of the respondent in the sex offender registry and Internet posting constituted a "deprivation of liberty interest," rejected his contention that he was entitled to a pre-deprivation hearing because whether the respondent was currently dangerous was not material under the Connecticut statute, as his designation as a sex offender was grounded solely on his conviction of a certain sex offense. Doe, 538 U.S. at 7-8, 155 L. Ed. 2d at 105, 123 S. Ct. at 1164-65.

15

Following the Court's decision in <u>Doe</u>, several courts in this state have rejected procedural due process challenges to the Registration Act and Notification Law because the duties of registrants under the Illinois statutes, like those under the Connecticut one, arise solely from one's conviction of certain enumerated sex offenses; whether the offender is currently dangerous is not relevant under the statutory scheme. See <u>In re D.R.</u>, 342 Ill. App. 3d at 516-17; <u>In re J.R.</u>, 341 Ill. App. 3d at 795-800. Under the Illinois statutes the only material fact is the offender's conviction of a sex offense, which the offenders have had an opportunity to challenge at trial or during juvenile adjudication proceedings. Accordingly, a due process hearing is not required prior to being subject to the Registration Act and Notification Law. <u>In re Phillip C.</u>, 364 Ill. App. 3d at 831-32; <u>In re J.R.</u>, 341 Ill. App. 3d at 798; see also <u>Logan</u>, 302 Ill. App. 3d at 332-33 (a pre-<u>Doe</u> decision rejecting the defendant's procedural due process challenge to the Registration Act and Notification Law because they apply to all sex offenders meeting the statutory definition and "law enforcement authorities have no discretion to determine which offenders would be exposed to public dissemination").

The defendant in this case acknowledges the Supreme Court's decision in <u>Doe</u>, as well as decisions from this court including

16

In re J.R., and In re D.R. He contends, however, that those cases are distinguishable because they do not address lifetime registration or the designation "sexual predator." We reject this distinction. First, a provision of the Connecticut statute at issue in Doe did involve lifetime registration. Second, even if we were to agree with the defendant's contention that designation as a sexual predator implicates a liberty interest, he has received all the process that is due. The designation "sexual predator" is based solely on being convicted after July 1, 1999, of an enumerated sex offense. Just as whether the respondents were currently dangerous was not material in Doe, In re J.R., or In re D.R., the instant defendant's sexual proclivity or recidivist tendencies are not relevant to the requirement that he register as a sexual predator. Even if the defendant could prove at a hearing that this conviction was a character anomaly or that he was devoid of recidivist tendencies, his conviction for attempt aggravated criminal sexual assault is sufficient to require him to register for life as a sexual predator. Under the Notification Law, the public would be entitled to having access to this fact and certain personal information via the Internet. See Milks v. State, 894 So. 2d 924 (Fla. 2005) (holding Florida's requirement that offenders convicted of certain sexual offenses register for life as "sexual predators" and that the public be

notified of this information over the Internet without a hearing to determine whether they present a danger to the community does not violate procedural due process under the federal or Florida Constitution); cf. State v. Guidry, 105 Haw. 222, 235, 96 P.3d 242, 255 (2004) (holding the Hawaii statute requiring lifetime registration for all sex offenders violates procedural due process under the Hawaii Constitution); State v. Bani, 97 Haw. 285, 298, 36 P.3d 1255, 1268 (2001) (holding the Hawaii statute requiring public notification including over the Internet of registered sex offenders without notice and a hearing violates procedural due process guarantees under the Hawaii Constitution).

The defendant argues that a predator is "one that preys, destroys, or devours," and that this description does not accurately describe him. What he fails to note, however, is that the term "sexual predator" is defined by statute (730 ILCS 150/2(E) (West 2004)), a definition he meets. Further, when an Internet user "clicks on" the designation "Sexual Predator" appearing under the defendant's information on the Department of State Police website, the statutory definition readily appears. The website, like that at issue in Doe, also provides a disclaimer providing in part that the Department of State Police

"has not considered or assessed the specific

risk of re-offense with regard to any

18

> individual prior to his or her inclusion on
> this Registry and has made no determination
> that any individual included in the Registry
> is currently dangerous. Individuals included
> on the Registry are included solely by virtue
> of their conviction record and Illinois state
> law."

The user must "agree" to the terms of this disclaimer before being allowed access to the sex offender database.

For these reasons, we reject the defendant's contention that his procedural due process rights under the federal constitution have been violated.

We similarly reject his contention that his right to procedural due process under the Illinois Constitution (Ill. Const. 1970, art. I, §2) has been violated. As the defendant notes, the due process clause of our state constitution may be construed more broadly than its federal counterpart. See People v. Washington, 171 Ill. 2d 475, 485-86, 665 N.E.2d 1330 (1996). However, the defendant has presented no argument that the due process clause of our state constitution construed "more broadly" than the federal due process clause leads to a different result. Further, we note that the courts in In re Phillip C., 364 Ill. App. 3d 822, and Grochocki, 343 Ill. App. 3d at 673, rejected the

19

notions that the Registration Act and the Notification Law violate our state's due process clause. See also Cornelius, 213 Ill. 2d at 203-05 (holding the Notification Law does not violate the substantive due process guarantees of the Illinois Constitution).

The defendant also argues that the Registration Act and Notification Law violate his right to procedural due process as applied in this case. He asserts that the facts underlying his conviction, including that this was his first offense, that he stopped his actions after looking into the victim's face, that he readily confessed his actions to the police, and that he expressed remorse at the time of his arrest as well as at trial, demonstrate he is not a sexual predator. To the contrary, the trial court found him guilty of attempt aggravated criminal sexual assault beyond a reasonable doubt. He therefore meets the statutory definition of a sexual predator and is therefore subject to the Registration Act and Notification Law.

III

The defendant's final contention is that section 110-14 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110-14 (West 2004)) entitles him to a $5-per-day credit for the 212 days he spent in pretrial custody to be applied toward the $100 sexual assault fine assessed under section 5-9-1.7(b)(1) of the Unified

20

Code of Corrections (730 ILCS 5/5-9-1.7(b)(1) (West 2004)). The State concedes, and we agree, the defendant is entitled to the $100 credit under the version of section 110-14 in effect when he was sentenced. People v. Hawkins, 311 Ill. App. 3d 418, 432, 723 N.E.2d 1222 (2000). We therefore order that the defendant's sexual assault fine be offset by his credit.

CONCLUSION

For the reasons stated above, we affirm the defendant's convictions and order that his $100 sexual assault fine be offset by his pretrial credit.

Affirmed as modified.

McBRIDE, P.J., and R. GORDON, J., concur.