NOTICE
Decision filed 12/22/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 231216-U

NO. 5-23-1216

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Pulaski County. |
| | ) | |
| v. | ) | No. 22-CF-69 |
| | ) | |
| PAUL M. WAREING, | ) | Honorable |
| | ) | Tyler R. Edmonds, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices Boie and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The evidence was sufficient for a reasonable fact finder to convict defendant of aggravated assault of a municipal employee, aggravated assault with a deadly weapon, and aggravated assault on public property.

¶ 2    Following a bench trial in Pulaski County, defendant, Paul M. Wareing, was convicted of aggravated assault of a municipal employee, aggravated assault with a deadly weapon, and aggravated assault on public property. The trial court sentenced defendant to 12 months' probation. On appeal, defendant argues that the State failed to prove him guilty beyond a reasonable doubt. Specifically, defendant contends that: (1) Mr. Johnson's apprehension of receiving an imminent battery was not reasonable; (2) the State failed to prove that a machete was a "deadly weapon"; (3) the State failed to establish that the machete's blade was greater than three inches; and, (4) the

1

State failed to present any evidence that defendant knew that Mr. Johnson was performing official duties. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On or about September 6, 2022, the State charged defendant by six count information with: count I, threatening a public official; count II, aggravated assault of a municipal employee; count III, aggravated assault with a deadly weapon; count IV, aggravated assault of an elderly person; count V, aggravated assault on public property; count VI, endangering the life or health of a child. The charges stemmed from a confrontation on September 1, 2022, between defendant and Nathan Johnson, who at the time was the mayor of Mounds, Illinois.

¶ 5      Relevant to this appeal, count II, aggravated assault of a municipal employee, alleged that defendant, without lawful authority, knowingly engaged in conduct which placed Nathan Johnson, a municipal employee performing his official duties, in reasonable apprehension of receiving a battery, and during the commission of this assault, defendant used a Category II weapon as defined by section 33A-1(c)(2) of the Criminal Code of 2012 (Code) (720 ILCS 5/33A-1(c)(2) (West 2022)), a machete knife with a blade longer than three inches in length, in that defendant rode a tractor toward Mayor Johnson while Mayor Johnson was at the City of Mounds Garage at 130 North Oak Street in Mounds, Illinois, performing his official duties, and defendant was holding a machete, waving it in the air, and repeatedly yelled threats to Mayor Johnson as follows: "you ruined my grandson's life, you're going to die, the word is out on you, you're going to die," in violation of section 12-2(b)(7) of the Code (*id.* § 12-2(b)(7)).

¶ 6      Count III, aggravated assault with a deadly weapon, alleged that defendant, without lawful authority, knowingly engaged in conduct which placed Nathan Johnson in reasonable apprehension of receiving a battery, and during the commission of the assault, defendant used a

2

deadly weapon, being a machete knife, in that defendant rode a tractor towards Nathan Johnson while the defendant was holding a machete, waving it in the air, and repeatedly yelled threats to Nathan Johnson as follows: "you ruined my grandson's life, you're going to die, the word is out on you, you're going to die," in violation of section 12-2(c)(1) of the Code (*id.* § 12-2(c)(1)).

¶ 7 Count IV charged defendant with aggravated assault on public property, alleging that defendant, without lawful authority, knowingly engaged in conduct which placed Nathan Johnson in reasonable apprehension of receiving a battery, and during the commission of this assault, the victim was located on public property, being the City of Mounds Garage located at 130 North Oak Street in Mounds, Illinois, in that defendant jumped off a tractor he was operating, charged at Nathan Johnson on foot causing Nathan Johson to step backwards in fear, and repeatedly yelled threats to Nathan Johnson as follows: "you ruined by grandson's life, you're going to die, the word is out on you, you're going to die" and "it's your life, you're the one gonna die, the word is out on you! I told you I was going to pay for your window, thank you for ruining my grandson's life," in violation of section 12-2(a) of the Code (*id.* § 12-2(a)).

¶ 8 On November 21, 2022, defendant waived jury trial. On May 4, 2023, the matter proceeded to a bench trial. The State first called Edward Brown, the Chief of Police in Mounds, Illinois. Chief Brown worked as chief of police on September 1, 2022. Chief Brown received a call on his cell phone from Mayor Johnson that he "had been attacked." The mayor accused defendant and Robbie Webb of being the attackers.

¶ 9 Chief Brown testified that his "understanding" was that defendant "was on his tractor doing some work during the week at his church" and "the mayor had gone to the city garage to conduct some city business." The two men "saw each other." At that time, defendant "became enraged and started to basically make these allegations and threats toward the current mayor."

3

¶ 10    Chief Brown proceeded to the Mounds City Garage and requested backup. Chief Brown alerted Sergeant Terry Riddle to respond to the location, as well. While on the way to the scene, on the radio, Chief Brown heard Sergeant Riddle "screaming on the radio" that "[h]e's running that way." Chief Brown was close to the scene, and he observed Sergeant Riddle chasing Robbie Webb, defendant's minor grandson. Chief Brown pursued Webb and ultimately took him into custody. Upon taking Webb into custody, defendant "pulled up on the scene." Chief Brown also took defendant into custody "for further investigation."

¶ 11    The State showed Chief Brown a photograph which Chief Brown identified as a "rusty machete." Chief Brown took the photo "immediately pursuant to the arrest of" defendant. The machete was located on the front passenger seat of defendant's vehicle.

¶ 12    Chief Brown testified that he previously arrested Webb for burglary of the mayor's vehicle. Webb was charged with a crime related to the burglary in juvenile court. During an interview conducted by Chief Brown with defendant present, Webb admitted to the burglary. Chief Brown testified that defendant "focused his anger on me instead of on his grandson."

¶ 13    Terry Riddle, a police officer with the Mounds Police Department, next testified. Sergeant Riddle responded to a call on his cell phone from Chief Brown, and he went to the city garage. Sergeant Riddle arrived before Chief Brown. Upon arrival, Sergeant Riddle saw Webb on a lawn mower. Webb ran toward the church. Sergeant Riddle told Webb to stop and come back, which Webb did. Sergeant Riddle told Webb that he would be detained for questioning, and Webb "took off running." Sergeant Riddle, along with later Chief Brown, chased him. Webb was ultimately detained. Defendant arrived on-scene, and he was also taken into custody.

¶ 14    Sergeant Riddle testified that a machete was recovered from defendant's vehicle. At trial, Sergeant Riddle identified the machete. Sergeant Riddle opened the evidence package, examined

4

the machete, and testified that it was the "exact machete" that he received from Chief Brown and placed into evidence. The State entered the machete itself, a photograph of the machete, and the police department log into evidence with no objection from defense counsel. Sergeant Riddle transported defendant to the jail. Defendant advised Sergeant Riddle that he received the machete from Thomas Newell.

¶ 15      The State next called Mayor Nathan Johnson Jr. Johnson became mayor of Mounds in May of 2021. By the time of trial, Johnson resigned for health reasons. However, he was the mayor on September 1, 2022. Johnson testified that in August of 2022, his vehicle was damaged. Johnson informed the chief of police. Defendant called Johnson on the telephone to tell Johnson that his grandson, Webb, committed the act and defendant advised Johnson that he would pay for the damages. Johnson called the police "immediately" after defendant's phone call. Defendant's grandson was ultimately charged with the burglary.

¶ 16      On September 1, 2022, Johnson was at the maintenance garage working on a "bush hog" on the back of a tractor. Johnson testified that he dismissed the maintenance superintendent, and Johnson filled in for him. Johnson testified that he was at the garage in his official capacity, working outside on the equipment. Johnson testified that defendant was across the street cutting weeds at the church with two other people. Defendant was on his tractor. Defendant "stopped his tractor and ran across the road toward me." Defendant yelled at Johnson, "Congratulations for ruining my grandson's life." Johnson testified that defendant was "in a rage trying to get to me."

¶ 17      Johnson testified that defendant's grandson "and another gentleman by the name of Thomas" ran "to jump between him and me." The two men restrained defendant, but defendant "threw them down" and defendant "came at me again." Webb and Thomas were able to stop defendant "a second time." Johnson testified that defendant ran onto city property.

¶ 18    Defendant went back to his tractor, "pulled a machete from the tractor," and "turned around toward [Johnson] with the machete." Defendant then "changed his mind and got on the tractor and sped off." Johnson "thought he was going to come at me again" with the machete. Johnson testified that he thought defendant "was going to hurt me." Johnson specified that when defendant "went back and got the machete and turned around toward me, I thought that he was coming back again with the machete." Johnson identified the machete. Johnson testified defendant was 12 to 14 feet away from him when defendant picked up the machete and faced him.

¶ 19    Johnson testified that he believed defendant would hurt him. Johnson testified that defendant told him that "the word was out on me that I was going to die." Defendant shouted that Johnson ruined his grandson's life. Defendant ran toward Johnson, and there was approximately eight feet between defendant and Johnson before the two men pulled defendant away. Defendant left the scene, and Johnson called the chief of police.

¶ 20    The State rested. Defendant moved for a directed verdict, which the trial court denied. Defendant called Robbie Webb. At the time of testifying, Webb was 16 years old and resided with his grandparents, defendant and Nancy Wareing. Webb observed a "conversation" between defendant and Johnson. Webb testified that the conversation never became physical. Webb denied physically restraining defendant. Webb identified the machete but testified that it was being used to "cut things like branches" while the men worked outside at the church. Webb testified that defendant had the machete in his hand, however, he did not threaten Johnson with the machete.

¶ 21    Webb admitted that he knew Officer Riddle and Chief Brown following his detention for breaking a car window. Webb also admitted to running from law enforcement when they arrived at the scene of the altercation between defendant and Johnson.

¶ 22    Defendant testified on his own behalf. Defendant testified that he formerly served as a city council member, and he knew Johnson from their service to Mounds, Illinois. He testified that he spoke with Johnson in person about Webb breaking Johnson's car window. According to defendant, Johnson did not want Webb to be arrested. However, Webb was ultimately arrested. Defendant was upset because he felt Johnson was dishonest with him.

¶ 23    On the date of the incident, defendant testified that he "drove up on my tractor" and saw Johnson across the street. Defendant told Johnson, "I would like to introduce you to the young man whose life you're destroying." Defendant testified that Johnson told him, "You're going to die." According to defendant, Johnson said, "They say they're gonna kill him. I'm saving his life." Defendant "got off" his tractor and walked over to Johnson. Defendant testified that he was unable to run but walked at a "quicker pace."

¶ 24    Defendant testified that he was approximately six feet away from Johnson and defendant called Johnson a liar. Defendant told Johnson: "You are nothing but Satan in person in the flesh" and "you can't tell the truth to save your life." According to defendant, Johnson said: "They say they gonna to kill him." Defendant responded, "Well, they say they're gonna to kill you." Defendant testified that he told Johnson: "I hope you like this hot weather because where you're going it's going to be plenty hot."

¶ 25    Defendant went back and got on his tractor. Defendant turned his tractor around and picked up his machete. Defendant testified: "And when I looked back and Robbie was crossing the street, I held up the machete, and I said, 'Don't you go over there. You go back on that side of the street and don't go over there.' " Defense counsel showed defendant the machete and noted that the machete was not sharp. Defendant denied getting closer than six feet to Johnson. Defendant testified that he never touched Johnson. Defendant testified that he was aware that Johnson was

7

the mayor at the time of the altercation. On rebuttal, the State recalled Johnson. Johnson testified that he was afraid for his life on the date of the altercation.

¶ 26 Following closing arguments, in rendering its verdict, the trial court considered count II. The court determined that the machete constituted a Category II weapon, where it "appears from my eye to be longer than a 3-inch blade." The court noted that the machete was "in evidence" and the court found it to be a weapon. The court noted that there was testimony that Johnson "was engaged in his official duties as mayor while on the property." The court also determined that "there was ample testimony regarding conduct that was indicated to place Mr. Johnson in reasonable apprehension of receiving a battery." As such, the court found defendant guilty of count II, aggravated assault of a municipal employee. The trial court noted that count III, aggravated assault with a deadly weapon, was "quite similar." The court found defendant guilty of count III. Similarly, the court found defendant guilty of count V where there was "ample testimony that during the incident" defendant "was present on the property of the City of Mounds, as well as a public way in the City of Mounds." The trial court found defendant not guilty on count I, count IV, and count VI.

¶ 27 Defendant filed a motion for a new trial. Following a hearing, the trial court denied the motion. On November 1, 2023, the trial court held a sentencing hearing. The court sentenced defendant to 12 months of probation. The court ordered no contact with Nathan Johnson and required defendant to complete anger management and any recommended counseling services. This timely appeal followed.

¶ 28                                    II. ANALYSIS

¶ 29 On appeal, defendant argues that the State failed to prove him guilty beyond a reasonable doubt. Specifically, defendant contends that: (1) Johnson's apprehension of receiving an imminent

8

battery was not reasonable; (2) the State failed to prove that a machete was a "deadly weapon"; (3) the State failed to establish that the machete's blade was greater than three inches; and, (4) the State failed to present any evidence that defendant knew that Johnson was performing official duties. The State responds, arguing that the evidence presented was sufficient to convict defendant beyond a reasonable doubt of the charged offenses. For the reasons that follow, we agree with the State and affirm.

¶ 30    The State has the burden of proving beyond a reasonable doubt each element of an offense. *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979); *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224 (2009). When a defendant challenges the sufficiency of the evidence, a court of review must determine "whether, [after] viewing the evidence in the light most favorable to the State, ' "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' (Emphasis omitted.)" *People v. Belknap*, 2014 IL 117094, ¶ 67 (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985), quoting *Jackson*, 443 U.S. at 319). It is not the role of the reviewing court to retry the defendant. *In re Q.P.*, 2015 IL 118569, ¶ 24. Rather, it is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *People v. Bradford*, 2016 IL 118674, ¶ 12. Therefore, a court of review will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses. *Id.*

¶ 31    A criminal conviction will not be reversed for insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt. *Belknap*, 2014 IL 117094, ¶ 67. Although a fact-finder's determination of witness credibility is entitled to great deference, it is not conclusive and does not bind the reviewing court. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004).

9

¶ 32    The testimony of a single witness is sufficient to convict if the testimony is positive and credible, even where it is contradicted by the defendant. *Siguenza-Brito*, 235 Ill. 2d at 228. Where the finding of the defendant's guilt depends on eyewitness testimony, a reviewing court must decide whether a fact-finder could reasonably accept the testimony as true beyond a reasonable doubt. *Cunningham*, 212 Ill. 2d at 279. Under this standard, the eyewitness testimony may be found insufficient "only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *Id.* at 280. A conviction will not be reversed simply because the evidence is contradictory or because the defendant claims that a witness was not credible. *Siguenza-Brito*, 235 Ill. 2d at 228.

¶ 33    First, defendant argues that Johnson's apprehension of receiving an imminent battery was not reasonable. The offense of assault occurs when an individual who, "without lawful authority, *** knowingly engages in conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12-1(a) (West 2022). Whether an assault victim was reasonably apprehensive is a question of fact. See *People v. Enerson*, 202 Ill. App. 3d 748, 749 (1990). A victim's apprehension can be established inferentially based on the conduct of the defendant and the victim. *Id.* at 749-50. "Determinations of the credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence are responsibilities of the trier of fact." *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 35. "A reviewing court must allow all reasonable inferences from the record in favor of the prosecution and will not overturn the decision of the trier of fact unless the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt." *People v. Taylor*, 2015 IL App (1st) 131290, ¶ 11.

10

¶ 34     Words alone are not usually enough to constitute an assault. *People v. Vanhoose*, 2020 IL App (5th) 170247, ¶ 26. Reviewing courts have held that a victim's apprehension must be of an immediate or imminent battery, not of an indeterminate future harm. *People v. Kettler*, 121 Ill. App. 3d 1, 6 (1984).

¶ 35     In the case before us, the evidence presented was sufficient to find that defendant's actions placed Johnson in a reasonable apprehension of receiving a battery. The evidence demonstrated that defendant approached Johnson while Johnson worked on equipment at the city garage. Defendant was across the street, and he drove a tractor across the street towards Johnson. Defendant got off the tractor and yelled at Johnson. Defendant's grandson and Thomas pulled defendant away from Johnson. Defendant was able to remove himself from Webb and Thomas, and again lunged toward Johnson. Once again, the two men intervened. Johnson testified that defendant yelled throughout the encounter, including a threat to kill him. Defendant then returned to his tractor and waved a machete at Johnson. This evidence is sufficient for the trial court to find that a reasonable person would have a reasonable apprehension of a battery.

¶ 36     Defendant contends that the testimony provided by the State's witnesses and defendant's witnesses varied. However, the trial court, as the trier of fact, was in the best position to make any credibility determinations. In a bench trial, it is the function of the trial court to determine the credibility of witnesses, weigh the evidence, draw reasonable inferences therefrom, and resolve any conflicts in the evidence. *Siguenza-Brito*, 235 Ill. 2d at 228. The trial court is "free to accept or reject as much or as little as it pleases of a witness' testimony" (*People v. Nelson*, 246 Ill. App. 3d 824, 830 (1993)) and "may take into account her own life and experience in ruling on the evidence" (*People v. Thomas*, 377 Ill. App. 3d 950, 963 (2007)). Here, the court expressly found the State's witnesses credible when rendering its finding of guilt. In viewing the evidence in the

11

light most favorable to the State, a rational trier of fact could have found the elements proved beyond a reasonable doubt.

¶ 37   Next, defendant argues that the State failed to prove that the machete was a deadly weapon. A deadly weapon is one that is "dangerous to life" or "one likely to produce death or great bodily injury," or one that "may be used for the purpose of offense or defense and capable of producing death." (Internal quotation marks omitted.) *People v. Stanley*, 369 Ill. App. 3d 441, 445 (2006). "Some weapons are deadly *per se*; others, owing to the manner in which they are used, become deadly. A gun, pistol, or dirk-knife is itself deadly, while a small pocket knife, a cane, a riding whip, a club or baseball bat may be so used as to be a deadly weapon." (Emphasis and internal quotation marks omitted.) *Id.* at 445-46. It is for the trier of fact to determine whether the weapon used is a deadly weapon based on the manner of its use and the circumstances of the case. *Id.*

¶ 38   Defendant contends that there was no evidence that he used or threatened to use the machete in a way that could cause death or serious injury. Moreover, he noted that the machete was rusty. Here, however, the trial court observed the machete during the trial. As noted by the State, "defendant in his rage retrieved this weapon and brandished it to incite fear from the victim." We also agree with the State's argument that "the efficacy of a bladed instrument does not make it any less of a weapon." Defendant overlooks the fact that a dull, rusty machete can still cause significant harm. A machete could certainly cut or penetrate someone, and is "capable of producing death." See *id.* Based on the record and evidence before us, we cannot say that the trial court erred by determining that the machete was a deadly weapon based on the manner of its use and the circumstances of this case.

12

¶ 39    Third, defendant contends that the State failed to establish that the machete's blade was greater than three inches, and thus a Category II weapon. See 720 ILCS 5/33A-1(c)(2) (West 2022) (defining a "knife with a blade of at least 3 inches in length" as a dangerous weapon). We disagree.

¶ 40    Although defendant is correct that there is no testimony establishing the blade length of the machete, the machete itself and photos of the machete were entered into evidence. See *People v. Richardson*, 401 Ill. App. 3d 45, 52 (2010) (photographs could prove nature and extent of injuries or manner and cause of death); *People v. Jackson*, 48 Ill. App. 3d 769, 772 (1977) (photographs could prove great bodily injury). In this case, the trial court viewed the weapon itself during the bench trial, and photographs of the weapon were admitted into evidence. The trial court observed the weapon and specifically noted in rendering its verdict that the blade was longer than three inches.

¶ 41    Additionally, we note that a photograph of the machete was entered into evidence and is part of the record on appeal. In the photograph, the car's logo is visible on the trunk and antenna, and the machete itself takes up a significant portion of the door of the trunk. A reasonable person could infer that the machete blade was longer than three inches based on the photograph. In rendering its verdict, the court determined that the machete constituted a Category II weapon, where it "appears from my eye to be longer than a 3-inch blade." The court noted that the machete was "in evidence" and the court found it to be a weapon. The trial court, as the trier of fact, was not required to abandon common sense when assessing the evidence before it.

¶ 42    Finally, defendant argues that the State failed to present any evidence that defendant knew that Johnson was performing official duties. On the contrary, there was significant evidence presented that established that defendant was aware that Johnson was the mayor of Mounds, Illinois. The evidence established that defendant was a former council member. Defendant himself

13

testified that Johnson was the mayor at the time of the altercation, and defendant was aware that Johnson was the mayor. At the time of the incidents, Johnson was outside of the city garage working on a weed cutter owned by the city. Defendant was a former alderman, and his church where he was working at the time was across the street from the city garage. "Knowledge is often proven by circumstantial evidence." *People v. Jasoni*, 2012 IL App (2d) 110217, ¶ 20. The evidence is sufficient to find that defendant knew Johnson was performing official duties as the mayor.

¶ 43　Viewing all of the evidence in the light most favorable to the prosecution, coupled with the reasonable inferences that may be drawn therefrom, we conclude that a rational trier of fact could have found defendant's guilt beyond a reasonable doubt. For the foregoing reasons, we hold that the State presented sufficient evidence to prove defendant guilty of aggravated assault of a municipal employee, aggravated assault with a deadly weapon, and aggravated assault on public property beyond a reasonable doubt.

¶ 44　　　　　　　　　　　III. CONCLUSION

¶ 45　For the foregoing reasons, defendant's Pulaski County convictions for aggravated assault of a municipal employee, aggravated assault with a deadly weapon, and aggravated assault on public property is affirmed.

¶ 46　Affirmed.